

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

|  |  |
|---|---|
| HARRY SCHIPPER, | ) CASE NO.: |
|         Plaintiff, | ) |
| | ) **02-20106** |
|     v. | ) |
| | ) |
| JORGE MAS, JOEL-TOMAS CITRON, OLAFUR | ) |
| OLAFSSON, WILLIAM N. SCHIEBLER, MARY | ) |
| K. BUSH, ARTHUR B. LAFFER, JOSE S. | ) **CIV - GOLD** |
| SORZANO, CARMEN SABATER and AUSTIN J. | ) |
| SHANFELTER, | ) |
| | ) |
|         Defendants, and | ) **MAGISTRATE JUDGE** |
| | ) **SIMONTON** |
| MASTEC INCORPORATED, | ) |
| | ) |
|         Nominal Defendant. | ) |

## PLAINTIFF'S VERIFIED DERIVATIVE COMPLAINT

Plaintiff, by his attorneys, alleges the following upon information and belief, except as to matters concerning himself, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, *inter alia,* the investigation conducted by plaintiff's counsel.

## NATURE OF THE ACTION

1.    Plaintiff brings this shareholder derivative action in the name and for the benefit of MasTec Incorporated ("MasTec" or the "Company") and under Rule 23.1, Fed. R.Civ. P.  As described below, defendants include MasTec's Board of Directors. MasTec is a nominal defendant.

2.    MasTec's senior management, with the Board's knowledge, recklessly and/or grossly mismanaged MasTec through a series of fraudulent transactions that damaged the Company.  As a



result, the Company became the subject of numerous lawsuits alleging both criminal and civil violations of law, and is now exposed to substantial liability.

3.      Although MasTec's Board of Directors (the "Board") knew or had reason to know that such wrongdoing had occurred, it failed to correct it or prevent its continuation.

4.      Beginning in 1999 and continuing into the present, the conduct of MasTec executives subjected the Company to a host of lawsuits alleging criminal and civil violations and resulted in a substantial decline in the market value of the Company, from approximately $1 billion in 1999 to $260 million in 2001. These improper actions include:

a.      **The Telergy Investment:**  MasTec executives recklessly monitored the Company's Telergy, Inc. investment. Defendant Citron, former Chief Executive Officer of MasTec, was a board member of Telergy and, thus, was fully apprised that the weakening in the telecommunications industry was causing the deterioration of Telergy's financial condition. However, Defendant Citron recklessly managed the investment, leading to the Company's restatement of its second quarter financial results for the period ending June 30, 2001.

b.      **The M.B.L. Paving Contract:**  MasTec executives violated state criminal law. M.B.L. Paving, Inc. ("M.B.L."), a MasTec subsidiary, was to provide services under a $58 million paving contract with Miami-Dade county.  In connection with this contract MasTec executives permitted M.B.L. to engage in illegal conduct, such as fictitious billing and fictional expenditures for labor, material and equipment. On February 8, 2001, a Florida grand jury in Miami-Dade County indicted M.B.L. for grand theft first degree for cost overruns in connection with the contract. This case is now set for trial on February 12, 2002. Defending this lawsuit at trial is likely to result in substantial costs to the Company.

c.       **Improper Loans and Bonuses:**   In April 2001, MasTec's market capitalization was at an all time low and the Company was burdened with millions of dollars in uncollectible receivables from bankrupt customers.  Nevertheless, MasTec executives approved several *interest free* loans to the Company's officers and a severance package worth $9 million to Defendant Citron.

d.       **The Sintel Debacle:**   In 1996, MasTec acquired Sintel, S.A. ("Sintel"), a construction company located in Spain.  In 1998, Sintel was sold to defendant Jorge Mas, his brother Juan Carlos Mas, and four other MasTec executives.  Through several long and elaborate schemes, MasTec executives ultimately caused the bankruptcy of Sintel by siphoning approximately $6 million from Sintel to MasTec bank accounts in Miami, Florida.  This wrongdoing caused the Company to be named in a lawsuit, in this District, that is likely to result in substantial damages to the Company.  The Company has also been ordered, by Spanish Judge Garzon, to post a $69.3 million bond in connection with engineering Sintel's bankruptcy.

5.       As a result of defendants' conduct, the business community's perception of MasTec has been, and will continue to be, substantially impaired.  Further, the Company will suffer from "liar's discount" because of its tainted image.[1]

6.       Plaintiff made a demand upon the Board of Directors on October 26, 2001 to bring this action.  (See Demand Letter, attached hereto as Exhibit "A").  The demand letter urged MasTec's Board to take the "appropriate steps to provide for equitable and therapeutic relief, as well as retroactive damages, in connection with the actions described" in the letter.

---

[1] The term "liar's discount" is commonly applied to stocks of companies that have been implicated in illegal behavior and that have misled securities analysts and the investing public.

7.     The MasTec Board has taken no action to provide redress to plaintiff for actions addressed in the demand letter, and have failed to communicate any intention of doing so.  On November 9, 2001, MasTec sent a letter to plaintiff's counsel (Exhibit "B" hereto) stating that the Board would respond to plaintiff's letter.  To date, the Board has given no response or taken any action.

## THE PARTIES

8.     Plaintiff was a shareholder of MasTec at the time the misconduct alleged herein occurred and continues to hold his MasTec stock. Plaintiff is a resident of New Jersey.

9.     Defendant MasTec is incorporated under the laws of Florida and maintains its executive offices in Miami Lakes, Florida.  As of July 22, 1998, the Company had over 21.8 million shares of commons stock outstanding.  MasTec stock is publicly traded on the New York Stock Exchange.

10.    The following defendants served as directors and/or senior executive officers of MasTec ("Individual Defendants") as of the commencement of this action and during all times material hereto.

| Name | Position |
| --- | --- |
| Jorge Mas | Chairman of the Board of Directors and a resident of the State of Florida |
| Arthur B. Laffer | Director and a resident of the State of California |
| Jose S. Sorzano | Director and a resident of the State of Maryland |
| William N. Schiebler | Director and a resident of the State of Utah |
| Austin J. Shanfelter | Director and a resident of the State of Florida |

-4-

| | |
|---|---|
| Mary K. Bush | Director and a resident of Washington D.C. |
| Joel-Tomas Citron | Director and a resident of the State of New York |
| Olafur Olafsson | Director and a resident of the State of New York |
| Carmen Sabater | Executive Vice President; Chief Financial Officer and a resident of the State of Florida |

11.     Each of the Individual Defendants, because of his or her position as a director and/or senior officer of MasTec, owed and continues to owe fiduciary duties to the nominal corporate defendant and its present and former shareholders in connection with the operations, management and direction of MasTec.  Unless otherwise specifically indicated herein, the phrase "defendants" does not include MasTec.

12.     To discharge these duties, defendants were required, among other things:

      a.     to ensure that the business and affairs of MasTec were conducted in accordance with state and federal laws, rules and regulations and the charters and by-laws of the companies;

      b.     to ensure the prudence and soundness of MasTec management's policies and practices; and

      c.     to remain informed as to how MasTec was in fact operating and, upon receiving notice or information of imprudent or unsound practices, to make an appropriate, thorough investigation in connection therewith and to take steps to correct the condition or practice.  The defendants failed to discharge these duties at all relevant times hereto.

13.     Each defendant herein is sued individually as a conspirator or aider and abettor as well as, in their individual capacity as directors and/or officers of MasTec.  The liability of each

arises from the fact that they have caused or engaged in all or part of the unlawful acts, plans, schemes, or transactions complained of herein and were necessary and indispensable to the consummation of the wrongs complained of herein.

### JURISDICTION AND VENUE

14.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff, on the one hand, and defendants, on the other, are citizens of different states.  The amount in controversy exceeds $75,000 exclusive of interests and costs.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

15.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). Many of the acts, transactions, and occurrences constituting violations of law complained of herein occurred in this District and MasTec's principal place of business is located in this District.

### SUBSTANTIVE ALLEGATIONS

16.     MasTec provides end-to-end voice, video, data and energy network infrastructure solutions for a broad range of communications, broadband, energy and other corporate clients.  The Company designs, builds, installs, maintains and monitors internal and external networks, transmission facilities and data storage centers supporting e-commerce and other communications, computing and energy systems.  The Company also provides datacom infrastructure services to telecommunication companies primarily in the heavily populated states of southern Brazil, through a 51% owned joint venture.

## MasTec Officers and Directors Engaged In Conduct
## Which Exposed The Company to Criminal Investigation

17.     MasTec executives, with the Board's knowledge, devised schemes that resulted in violations of state and federal laws.  Defendants intentionally fostered or acquiesced in MasTec's fraudulent activities in connection with a paving contract with M.B.L. Paving Incorporated ("M.B.L."), a subcontractor.

18.     On June 1, 1996 and continuing on through June 1, 1997, M.B.L. conducted illegal activities in connection with services it was to provide under a $58 million paving contract with Miami-Dade county.  On February 8, 2001, a Florida grand jury in Miami-Dade County indicted M.B.L. for grand theft first degree, pursuant to Fla. Stat. § 812.014(1)(2)(a) and trial is set for February 12, 2001.  The indictment was the culmination of a three-year Florida grand jury investigation, conducted by the state of Florida, of cost over-runs on a $58 million contract held by MasTec.  The grand jury charged that M.B.L. knowingly created inflated and fictitious billings.  According to the indictment, M.B.L.'s invoices to Miami-Dade county reflected fictional expenditures for labor, materials and equipment.

19.     In connection with the M.B.L. transaction, MasTec concealed from the public the fact that M.B.L. was a wholly owned MasTec subsidiary, and not merely a subcontractor, and that M.B.L. president Paul Banks was MasTec's agent acting at MasTec direction.

20.     The illegal activity was conducted through a MasTec subsidiary at the direction of MasTec's officers.  MasTec's officers and directors, accordingly, have caused the Company to be exposed to criminal sanctions and to incur the cost of defending itself in an ongoing criminal investigation by virtue of their involvement in the operations of M.B.L. Paving.

## MasTec's Misrepresentations Concerning Its Investment in Telergy

21.     As early as 1996, MasTec lent money to New York-based Telergy, Inc. In connection with this loan, MasTec took a $6.5 million equity interest in Telergy, Inc.   Additionally, MasTec gave Telergy lender financing for $42.5 million of construction work, part of a $300 million multi-year contract.   Under the agreement, MasTec was to provide design, installation, construction, procurement and maintenance services for the build-out of Telergy's internal and external networks.

22.     On May 11, 2000, Telergy filed a Registration Statement with the Securities and Exchange Commission for a $250 million initial public offering of its Class A common stock.   On February 13, 2001, however, Telergy withdrew its filing, citing weak market conditions in the telecommunications sector.

23.     Former Chief Executive Officer Joel-Tomas Citron was an active member of Telergy's board.  Given Citron's involvement with Telergy, Citron was aware that the weakening telecommunication industry was the cause of Telergy's deteriorating financial condition, yet did nothing to limit MasTec's exposure to the impaired Telergy investment.

24.     MasTec's losses on its Telergy investment eventually led it to restate second quarter 2001 financial results.  On August 16, 2001, the Company announced it would have to restate its second quarter financial results (for the period ending June 30, 2001), to include a write-off of the $6.5 million equity investment in Telergy, and reported a *loss* of $0.05 per share.

## MasTec Executives Misused Corporate Funds

25.     MasTec had close ties with the Cuban American National Foundation ("CANF"). In fact, MasTec's relationship with the CANF was so close that it permitted the CANF to use

MasTec personnel and facilities for the purposes of the CANF organization, without obtaining a resolution of the Board of Directors.

26.    Although MasTec had limited cash -- less than $15 million -- MasTec officers approved various loans to the Company's executives, as well as an exorbitant severance package to its former Chief Executive Officer.  MasTec's Proxy Statement, filed with the SEC on April 5, 2001 details these loans:

- Former Chief Executive Officer Joel-Tomas Citron received a $9 million severance payment, which equaled about *seven* times his earnings of $1.3 million for 2000.  In addition, Citron received a $750,000 *interest free loan*.

- Vice President Carmen Sabater was granted a $125,000 *interest free loan*.

- Juan Carlos Mas received a $169,000 loan.

- Jose Ramon Mas received a $143,000 loan.

27.    The impropriety of these loans is underscored by the likely uncollectibility of millions of dollars of receivables from bankrupt MasTec customers.  MasTec's quarterly report on Form 10-Q for the quarter ending June 30, 2001, announced that:

> "[C]ertain of our clients, including competitive local exchange carriers, have filed for bankruptcy or have been experiencing financial difficulties.  We review all our clients on a regular basis, and as a result, increased our reserves by $16 million and $38 million during the three and six months ended June 30, 2001, to reflect the fact that clients may be unable to meet their obligations to us in the future."

28.    As a result of these loans and the enormous payments to Citron, over $10 million of funds were diverted from legitimate corporate use for the use of MasTec's executives to MasTec's detriment.

## MasTec Officers Caused the Company to Engage in
## Illegal Action In Connection With Sintel, S.A.

29.    In 1996, MasTec acquired Sintel, S.A. ("Sintel"), a construction company located in Spain. Sintel controlled MasTec's Spanish and Latin American operations. In 1998, Sintel was sold to defendant Jorge Mas, his brother Juan Carlos Mas, and four other MasTec executives.

30.    In connection with its involvement with Sintel, MasTec officers caused the Company to engage in an elaborate self-dealing scheme to enrich MasTec to Sintel's detriment.   The fraudulent scheme included: (a) MasTec's $5 million defalcation; (b) a $1 million fraudulent transfer; (c) a fraudulent transaction in Haiti; and (d) MasTec's self dealing in 2000.

31.    MasTec executives, reporting to Jorge Mas Santos, fraudulently transferred $5 million from Artcom Technologies Corporation (a holding company which was an owner of Sintel) to MasTec's accounts, and instructed employees to cover up the transactions.  MasTec's scheme was intended to wrongfully deplete Artcom's resources to unduly enrich MasTec.

32.    MasTec officers also illegally siphoned $1 million from Sintel to MasTec on January 29, 1999. In a complex scheme, MasTec officers caused $1 million to be transferred from Sintel to numerous bank accounts throughout the country until the transfer ultimately ended up in MasTec's bank accounts in Miami, Florida.

33.    In addition, MasTec executives transferred  funds illegally from Sintel to shell companies in Haiti, which were not economically viable and could not have commercially benefitted from these funds.

34.    During 1999 and 2000, MasTec's management engaged in self-dealing and fraud to funnel funds from Sintel to MasTec.  In addition to the criminal investigation commenced by the

government of Spain, these transactions have resulted in a lawsuit filed on January 29, 2001, in this District, captioned *Artcom Technologies, Corp. v. MasTec, Inc.*, Case No. 01-351 CIV-Lenard, for, *inter alia,* racketeering, conspiracy and fraud. The action seeks punitive damages. The Company has incurred and will continue to incur significant expenses to defend against this lawsuit.

35.     Recently, it was revealed that MasTec officers and directors have been ordered by Spanish Judge Baltasar Garzon to post a $69.3 million bond for illegally engineering Sintel's bankruptcy. In connection with the posting of the bond, Judge Garzon stated that MasTec employed a management style that was not designed to "stimulate the industrial activity of Sintel, but rather to turn [the Company] into an instrument at the service of [MasTec's] private interests with total disregard for the right of its workers and creditors." MasTec is now forced to incur the cost of posting this bond, as well as incur the defense costs in the Spanish anticorruption investigation.

## The Broward County Contract

36.     Gross mismanagement of a MasTec jail construction contract with the Broward Sheriff's Office resulted in lengthy delays, causing a countersuit filed by Broward seeking $13 million in damages. Although this complaint has been dismissed without prejudice, the claims alleged by Broward resulted in MasTec losing a $3.4 million Broward County contract to install traffic signals.

37.     MasTec's gross mismanagement and fraud in connection with local government contracts in Broward and Miami-Dade counties has resulted in the loss of significant business opportunities for the Company, and has forced MasTec to incur legal fees in connection with defending itself in this lawsuit.

### Removal from S&P MidCap Index

38.     MasTec has been removed from Standard & Poor's MidCap 400 Index due to a lack of trading activity in the stock. The illegal activity perpetrated by defendants has injured and is continuing to injure MasTec's reputation, business and goodwill.

### DERIVATIVE ALLEGATIONS

39.     Plaintiff brings this action derivatively in the right of and for the benefit of MasTec to redress injuries suffered and to be suffered by the nominal corporate defendant, as a direct result of defendants' wrongdoing.

40.     Plaintiff will adequately and fairly represent the interests of the nominal corporate defendant and its stockholders in enforcing and prosecuting their rights.

41.     Plaintiff caused a demand to be made to the current board of directors of MasTec on October 26, 2001 to redress injuries resulting from the misconduct alleged above. *See* Exhibit A.

42.     On November 9, 2001, MasTec acknowledged receipt of plaintiff's October 26, 2001 demand letter but failed to address any of the issues raised therein. *See* Exhibit B.

43.     As of the date of the filing of this Complaint, MasTec has issued no further response. Plaintiff and other MasTec shareholders are entitled to relief.

### FIRST CLAIM
**(Against The Individual Defendants
For Breaches of Fiduciary Duty)**

44.     Plaintiff repeats and realleges each and every paragraph above as though fully set forth below.

45.     This claim is brought derivatively by plaintiff on behalf of MasTec against the Individual Defendants.

-12-

46.     The Individual Defendants were and/or are fiduciaries of MasTec and owed the Company a duty to conduct its business loyally, faithfully, carefully, diligently and prudently.  These claims are asserted based on the Individual Defendants' acts in violation of state law and common law, which acts constitute gross and reckless breaches of fiduciary duties.

47.     The Individual Defendants, in their roles as executives and/or directors of MasTec, participated in the acts of mismanagement and misrepresentation alleged herein, or acted in reckless disregard of the facts known to them, and failed to exercise due care.  The defendants became aware, or should have become aware through reasonable inquiry, of the facts alleged herein, but did nothing to correct them and thereby breached their duty of care, loyalty, accountability and disclosure to the stockholders of MasTec by failing to act as an ordinary prudent person would have acted in a like position.

48.     The Individual Defendants have been responsible for the gross mismanagement of MasTec.  These defendants abdicated their corporate responsibilities, obligations and fiduciary duties by mismanaging MasTec as alleged above.

49.     As a result of the Individual Defendants' wrongful conduct and actions, MasTec has suffered considerable damage and drastic diminution in the value of its assets and stock.

50.     All the Individual Defendants, singly or in concert, engaged in the aforesaid conduct in grossly negligent and/or reckless disregard of their fiduciary duties to MasTec.

51.     At all times relevant herein, the Individual Defendants occupied fiduciary positions with MasTec that made them privy to confidential material inside information concerning MasTec and its operations.

52.     By reason of the foregoing, the Individual Defendants have breached their fiduciary obligations to MasTec and its stockholders.

53.     MasTec and its stockholders have been injured by reason of the Individual Defendants' grossly negligent breach and/or reckless disregard of their fiduciary duties to the Company.   The Individual Defendants engaged in the aforesaid conduct without exercising reasonable and ordinary care which they as directors and senior executive officers owed to MasTec and, in bad faith, have wrongfully breached and/or aided and abetted breaches of fiduciary duties to MasTec.  Plaintiff, as a stockholder and derivative representative of MasTec, seeks damages and other relief for the nominal corporate defendant.

## **JURY DEMAND**

54.     Plaintiff hereby demands a trial by jury.

**WHEREFORE**, plaintiff demands judgment and preliminary and permanent relief in plaintiff's favor and in favor of MasTec, as appropriate, against all defendants as follows:

a.      Authorizing the maintenance of this action as a derivative action, with plaintiff as derivative plaintiff;

b.      Declaring that the Individual Defendants have violated their fiduciary duties to MasTec;

c.      Declaring that MasTec is not required to pay any Individual Defendant any benefits pursuant to the terms of any employment, separation or consulting agreements;

d.      Directing that MasTec is entitled to contribution from the Individual Defendants;

-14-

e.      Against each Individual Defendant for restitution and/or damages, including pre-judgment interest;

f.      Requiring that MasTec implement effective internal control mechanisms and corporate governance policies and procedures designed to adequately monitor MasTec's compliance with federal and state laws;

g.      Awarding plaintiff the costs and disbursements of this litigation, including reasonable allowances for plaintiff's attorney's fees and experts' fees and expenses; and

h.      Granting such other further relief as may be just and proper under the circumstances.

Dated: January 9, 2002

**MILBERG WEISS BERSHAD
HYNES & LERACH LLP**

By: _____
        Kenneth J. Vianale
        Fla. Bar. No. 169668
        Email: kjv@mwbhlny.com
        Tara Isaacson
        Fla. Bar No. 0492183
        Email: it@mwbhlny.com
5355 Town Center Road
Suite 900
Boca Raton, FL 33486
Tel:    (561) 361-5000
Fax:    (561) 367-8400

**FRUCHTER & TWERSKY**
Jack G. Fruchter
One Penn Plaza, Suite 1910
New York, NY 10119
Tel:    (212) 279-5050
Fax:    (212) 279-3655

**Attorneys for Plaintiff**

-15-

# VERIFICATION

I, Harry Schipper, state: I am the named plaintiff in this action.  I have read the foregoing Verified Derivative Complaint and know the contents thereof.  Based upon the investigation of my counsel, I believe that the statements contained therein are true.

Dated: _____1/3/02_____

_____
HARRY SCHIPPER

-16-

**EXHIBIT "A"**

# Milberg Weiss Bershad Hynes & Lerach LLP

The Plaza, 5355 Town Center Road, Suite 900, Boca Raton, FL 33486
(561) 361-5000  Fax: (561) 367-8400

www.milberg.com



New York
San Diego
San Francisco
Los Angeles
Seattle

October 26, 2001

<u>Via Federal Express</u>

Board of Directors
c/o Jorge Mas/Chairman of the Board
Mastec Incorporated
3155 N.W. 77th Avenue
Miami, FL  33122-1205

Dear Members of the Board:

We have been retained as counsel by Harry Schipper, a shareholder of Mastec Incorporated ("MasTec" or the "Company").  Mr. Schipper was a shareholder at the time the actions complained of herein occurred and continues to hold his shares.  Pursuant to Fla. Stat. § 607.07401, this letter represents a demand that MasTec's Board of Directors take the appropriate steps to provide for equitable and therapeutic relief, as well as retroactive damages, in connection with the actions described below.

Our investigation has revealed that various acts of fraud and gross mismanagement by certain of MasTec's officers and directors have occurred and will continue to injure MasTec and its shareholders.  The actions committed by the officers and directors, which have resulted in a direct breach of their fiduciary duties to the Company's shareholders, include: (1) MasTec's exposure to a criminal investigation; (2) the Company's failure to take a timely write-off of an impaired asset; (3) the misuse of corporate funds to benefit former and current executives; (4) an anticorruption investigation against MasTec by the government of Spain for illegally engineering the bankruptcy of Sintel; (5) a lawsuit seeking treble damages alleging MasTec officers illegally siphoned funds from Sintel; and (6) gross mismanagement of a contract with Broward County resulting in the cancellation of future work with Broward County.

<u>MasTec Officers And Directors Have Exposed The Company To Criminal Investigation</u>

MasTec violated Securities and Exchange Commission ("SEC") rules and regulations, as well as state and federal laws by using fraudulent means to obtain paving contracts such as the contract with subcontractor, M.B.L Paving Incorporated.  ("M.B.L.")  On February 8, 2001, a grand jury in Miami-Dade County, Florida issued an indictment against M.B.L for grand theft first degree, pursuant to Fla. Stat. § 812.014(1)(2)(a).  M.B.L knowingly created inflated and fictitious billings in connection with an approximately

MILBERG WEISS BERSHAD HYN  & LERACH LLP

Page 2

$58 million contract with Miami-Dade County held by MasTec North America. In connection with the M.B.L. transaction, MasTec concealed the fact that M.B.L. was a wholly owned subsidiary, rather than a subcontractor, and that M.B.L. President Paul Banks was an agent of MasTec acting at the MasTec executive's direction. By conducting the affairs of the Company in violation of law, MasTec officers and directors have caused the company to be exposed to criminal sanctions and to defend itself in an ongoing criminal investigation, including testimony before a grand jury.

The conduct of MasTec officers in connection with the Miami-Dade County contract has also resulted in the filing of an action in the Miami Circuit Court pursuant to the Florida Whistleblowers' Act of 1991, §§ 448.101-448, Florida Statutes (2000), alleging that a former employee was fired for threatening to expose this illegal activity.

### Misrepresentations Concerning MasTec's Investment In Telergy

Mastec executives failed to timely write-off an interest in New York-based Telergy Inc. As early as 1996, MasTec lent money to Telergy and took a $6.5 million equity interest in the company. MasTec gave Telergy lender financing for $42.5 million of construction work, part of a $300 million multiyear contract. By virtue of former Chief Executive Officer Joel Tomas Citron's involvement on the Board of Telergy, Citron was aware of Telergy's deteriorating financial condition and failed to limit MasTec's exposure to Telergy, and write-off the $42.5 million lent by MasTec to Telergy, an asset which has been impaired for some time. In fact, the Telergy investment led to MasTec's restatement of second quarter 2001 financial results. Instead of reporting a $2.2 million profit, MasTec restated second quarter results to include a write-off of $6.5 million worth of the investment in Telergy, and reported a *loss* of $0.05 per share.

### MasTec Executives Misused Corporate Funds

In addition to the fraudulent practices detailed above, MasTec executives permitted the Cuban American National Foundation ("CANF") to use MasTec personnel and facilities for the purposes of the CANF organization, without obtaining a resolution of the Board of Directors. It has also been alleged that Juan Carlos Mas, MasTec's President, embezzled Company funds to finance the construction of his personal residence.

Despite the fact that MasTec had extremely limited cash, less than $15 million, (check figure), MasTec officers approved a $9 million severance payment to former Chief Executive Officer Joel-Tomas Citron as well as a $750,000 interest free loan. In addition, Vice President Carmen Sabater was granted a $125,000 interest free loan, and Juan Carlos Mas and Jose Ramon Mas received loans of $169,000 and $143,000 respectively. The impropriety of these transactions is evident given MasTec's cash constraints, as well as

MILBERG WEISS BERSHAD HY:   & LERACH LLP

Page 4

As a result of the improper practices of MasTec management and officers: the price of MasTec stock has declined from over $60 per share to $4.18 per share; the market capitalization has fallen to only $200 million; and the Company has been removed from Standard & Poor's MidCap 400 Index due to a lack of representation. The illegal activity perpetrated by MasTec management has and is continuing to injure MasTec's reputation, business and goodwill.

Very truly yours,

Kenneth J. Vianale

KJV/cem

**EXHIBIT "B"**



November 9, 2001

**CONFIDENTIAL**

Kenneth J. Vianale, Esq.
Milberg Weiss et al.
The Plaza, 5355 Town Center Road
Suite 900
Boca Raton, FL 33486

Re:   Harry Schipper

Dear Ken:

We are in receipt of your letter dated October 26, 2001 and are preparing an appropriate response. Due to the number of allegations contained in the letter, we ask that you provide adequate time for responding. We will be back to you shortly.

Sincerely,

José Sariego
Senior Vice President
and General Counsel

G:\LEGAL\LTRS\SCHIPPER.doc

MasTec, Inc. 3155 NW 77th Avenue Miami Florida 33122
305.406.1954 305.406.1907 fax www.mastec.com jsariego@mastec.com

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET 02 - 20106

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Harry Schipper

## DEFENDANTS

Jorge Mas; Jose Cabrera; Gudafur Olafsson;
William N. Schiebler; John K. Bush;
Arthur B. Laffer; Jose S. Sorzano; Carmen
Sabater and Austin J. Shanfelter

MAGISTRATE JUDGE
SIMONTON

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF   Bergen, NJ
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Dade
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES  USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

Dade 02-20106 ASC/Simonton

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Milberg Weiss Bershad Hynes & Lerach, LLP
5355 Town Ctr. Rd., Suite 900, Boca Raton, FL 33486;(561)361-5000

ATTORNEYS (IF KNOWN)

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:  DADE   MONROE,   BROWARD,   PALM BEACH,   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE   HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN 'X' IN ONE BOX ONLY)

☐ 1  U.S. Government
Plaintiff

☐ 2  U.S. Government
Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

✔ 4  Diversity
(Indicate Citizenship of Parties
in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN 'X' IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med Malpractice | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury — Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | B☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | | B☐ 640 R R & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | **B SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | ☐ 444 Welfare | B☐ 535 Death Penalty | ☐ 791 Empl Ret Inc Security Act | A☐ 871 IRS — Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | A or B |
| | | B☐ 555 Prison Condition | | | |

## VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)

Shareholder's derivative action

LENGTH OF TRIAL
via ___ days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A **CLASS ACTION**
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ YES   ☐ NO

## VIII. RELATED CASE(S) (See instructions):
IF ANY

JUDGE _____   DOCKET NUMBER _____

DATE
1/9/01

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #  855490   AMOUNT  $150.00   APPLYING IFP  1/10/02   JUDGE _____   MAG. JUDGE _____